# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

MATTHEW J. SANDERS,                          :

                        Plaintiff,

        -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.          :

Case No. 3:09-cv-325

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

---

## REPORT AND RECOMMENDATIONS

---

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD in June, 2001, alleging disability from September 1, 1999, which was denied at the initial level of review and Plaintiff took no further appeal. (Tr. 55-57; 36-39).

Plaintiff subsequently filed applications for SSD and SSI on July 19, 2005, alleging disability from July 20, 2004, due to a mental impairments. (Tr. 58-60; 280-82; 70-79). Plaintiff's applications were denied initially and on reconsideration. (Tr. 40-42; 44;46; 284-86; 288-90). Administrative Law Judge Daniel Shell held a hearing, (Tr. 307-38), following which he determined that Plaintiff is not disabled. (Tr. 14-18). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that he has severe residuals of a right clavicle fracture, residuals of orbital fracture, affective and anxiety disorders, and borderline intellectual functioning, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 19, ¶ 3; Tr. 20, ¶ 4). Judge Shell also found that Plaintiff is capable of performing a limited range of medium work. (Tr. 23, ¶ 5). Judge Shell then used section 203.26 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony and concluded that there is a significant number of jobs in the economy that Plaintiff is able to perform. (Tr. 27, ¶ 10). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 28).

In his Statement of Errors, Plaintiff does not dispute the Commissioner's findings with respect to his alleged exertional impairments. (Doc. 8). Accordingly, the Court will focus its

review of the record on the mental health evidence.

The record contains a copy of Plaintiff's school records which reflect that Plaintiff's date of birth is August 10, 1977; and that while in the ninth grade, his grades were generally Ds and Fs. (Tr. 166-69).

The record contains a report of a May 3, 2000, mental health evaluation from examining psychologist Dr. Bonds. (Tr. 296-301). While it appears at first blush that Plaintiff submitted Dr. Bonds' report to the Appeals Council, a review of Judge Shell's decision shows that he referenced Dr. Bonds' report. (Tr. 22). In addition, a "RECEIVED" stamp on Dr. Bonds' report indicates that the Bureau of Disability Determinations received the report on May 12, 2000. (Tr. 296). Accordingly, the Court will assume that in making his determination that Plaintiff is not disabled, Judge Shell had Dr. Bonds' report before him. Accordingly, the Court will include Dr. Bonds' report for purposes of substantial evidence review.

Dr. Bonds reported on May 3, 2000, that Plaintiff did not graduate from high school, completed the ninth grade, attended special education classes, had clear and understandable speech, normal thought processes, normal mood, and that his affect was broad and appropriate. (Tr. 296-301). Dr. Bonds also reported that Plaintiff did not display any overt signs of anxiety, was alert and oriented and that he had sufficient understanding and reasoning abilities to live independently and make important decisions about his future. *Id.* Dr. Bonds noted that Plaintiff's verbal IQ was 68, his performance IQ was 63, and his full scale IQ was 63 which fell in the extremely low range of intellectual functioning, his memory was in the extremely low range, and that he read at the first grade level. *Id.* Dr. Bonds identified Plaintiff's diagnosis as mild mental retardation and he assigned Plaintiff a GAF of 60. *Id.* Dr. Bonds opined that Plaintiff was able to understand,

remember, and follow simple one and two-step instructions, his ability to concentrate and persist on task was mildly impaired, his ability to relate to others was moderately impaired, his ability to perform consistently and without excessive breaks was mildly limited, and his ability to tolerate normal work stress was mildly impaired. *Id.*

Examining psychologist Dr. Stoeckel reported on August 22, 2001, that Plaintiff currently resided basically on the street, had a ninth grade education in special education, was in the ninth grade for three years, was generally cooperative but a poor informant, and that his activity level was within normal limits. (Tr. 173-78). Dr. Stoeckel also reported that Plaintiff had some slight speech impairment, normal thought processes, sometimes rambled about his various emotional difficulties, did not display any confusion or flight of ideas, and that his affect was generally broad while his mood was dysphoric. *Id.* Dr. Stoeckel noted that Plaintiff appeared mildly anxious, had some autonomic arousal, was alert and oriented, and that he appeared to have limited insight. *Id.* Dr. Stoeckel identified Plaintiff's diagnoses as intermittent explosive disorder and borderline intellectual functioning and he assigned Plaintiff a GAF of 65. *Id.* Dr. Stoeckel opined that Plaintiff's ability to follow simple one and two step instructions did not appear to be significantly impaired, his ability to attend and concentrate was mildly impaired, his ability to interact with others was moderately impaired, and that his ability to tolerate the normal stress associated with routine work was mildly impaired. *Id.*

Examining psychologist Dr. Jones reported on March 23, 2006, that Plaintiff dropped out of school in the ninth grade, was classified as learning disabled and was eligible for special education in reading and math, that he displayed facial irregularities in that the left side of his face drooped as did his left eye, and that his facial expressions were dull and unanimated. (Tr. 249-54).

6

Dr. Jones also reported that Plaintiff was cooperative, his speech was clear, his conversation was relevant and coherent, he was a fair historian, his stream of thought proved retarded to appropriate, and his thought association was primarily concrete. *Id.* Dr. Jones noted that Plaintiff's presenting demeanor was defeated, resigned, apathetic, and dysphoric, his affect was blunted, he was restless, he presented as preoccupied with his symptomatology, and that he evidenced a degree of confusion. *Id.* Dr. Jones noted further that Plaintiff presented as alert to distracted, was oriented, presented with minimal information, and that he had minimal judgment and common sense reasoning ability to live independently or make important decisions concerning his future. *Id.* Dr. Jones identified Plaintiff's diagnoses as cognitive disorder NOS, depressive disorder NOS, pain disorder with psychological and medical features, posttraumatic stress disorder, and attention-deficit/hyperactivity disorder, and she assigned Plaintiff a GAF of 52. *Id.* Dr. Jones opined that Plaintiff's abilities to relate to others, to understand, remember, and carry out instructions were moderately impaired, his ability to maintain attention and concentration to perform simple, repetitive tasks is mildly impaired, and his ability to tolerate the stress and pressures associated with day-to-day work activity was moderately impaired. *Id.*

Plaintiff's only challenge to the Commissioners decision is that he erred by failing to find that he satisfies Listing 12.05C or 12.05D. (Doc. 12).

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the

requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing).  It is not sufficient to come close to meeting the requirements of a Listing.  *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

> Listing 12.05 reads in part:
>
> *Mental Retardation and Autism:*   Mental retardation refers to a significantly sub average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)....
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ...
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
>
> D.  A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>    1.  Marked restrictions of activities of daily living;
>    2.  Marked difficulties in maintaining social functioning;
>    3.  Marked difficulties in maintaining concentration, persistence, or pace; or
>    4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

The regulations provide that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* one of the four sets of criteria...."  *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001) (citations omitted)(emphasis in original).

Although Dr. Bonds identified Plaintiff's diagnosis as mild mental retardation, there is absolutely no evidence in the record that Plaintiff had a significantly sub average general

intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period, that is, before age 22. While Plaintiff's school records are a part of the evidence, those records do not contain the results of IQ testing which was administered during Plaintiff's developmental period.

The Court notes that Plaintiff's date of birth is August 10, 1977, and that Dr. Bonds' report is dated May 3, 2000, less than one year after Plaintiff attained age 22. However, as noted above, a claimant has the burden of proving that his or her impairments meet or equal the Listings and it is simply not sufficient to "come close". Moreover, none of the examining mental health experts of record reported that Plaintiff exhibited deficits in adaptive behavior. Indeed, Dr. Bonds reported that Plaintiff had sufficient understanding and reasoning abilities to live independently and make important decisions about his future. Additionally, Dr. Stoeckel opined that Plaintiff was, at worst, moderately impaired in his ability to interact with others. Finally, Dr. Jones reported that although Plaintiff had minimal judgment and common sense reasoning ability, he was at worst, moderately impaired.

Under these facts, the Commissioner did not err in finding that Plaintiff did not satisfy Listing 12.05.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v.*

*Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

May 7, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).